UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAAC GUEST and NICOLE GUEST, individually and as parents and natural guardians of their minor children, I.G., M.G., S.G. and J.G.<br><br>Plaintiffs,<br><br>Vs.<br><br>ALLEGHENY COUNTY and DESARAE HORTON,<br><br>Defendants. | No.:  2:20-cv-130<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, COME Plaintiffs Isaac Guest and Nicole Guest, individually and as parents and natural guardians of their minor children, I.G., J.G., M.G. and S.G. ("Plaintiffs") by and through their attorneys, Thomas B. Anderson, Esquire and Thomson, Rhodes & Cowie, P.C. and files this Complaint against Allegheny County, acting through its Department of Human Services, Office of Children Youth and Families, and Desarae Horton ("Defendants") in support thereof avers as follows:

### JURISDICTION

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. §1983.

2. This Court can exercise personal jurisdiction over Defendants because, among other things, Defendants are a county government body, and its agent/employee, in the Commonwealth of Pennsylvania. Defendants are located within in the Western District of Pennsylvania and Defendants' interactions with Plaintiffs occurred in the Western District of Pennsylvania.

Page **1**

## VENUE

3. Venue is proper in this judicial district because the unlawful civil rights violations alleged in the Complaint were committed within the Western District of Pennsylvania; Defendant, Allegheny County is located within the Western District of Pennsylvania and the actions of its agent/employee, Defendant Desarae Horton, occurred in the Western District of Pennsylvania. Accordingly, venue lies in the United States District Court for the Western District of Pennsylvania.

## PARTIES

4. Plaintiffs are adult individuals, husband and wife and the parents and natural guardians of their minor children who were at the time of the civil rights violations alleged herein ages 6 (I.G.); 5 (M.G.); 3 (S.G.); and 2 months old (J.G.).

5. Defendant Allegheny County is a local government unit within the Commonwealth of Pennsylvania. Allegheny County has a Department of Human Services, and an Office of Children Youth and Families ("OCYF"). OCYF acted through its agents and employees at all times relevant, including but not limited to, Desarae Horton.

6. Defendant, Desarae Horton, is an employee of Allegheny County and acts as a Caseworker for OCYF.

7. All of Defendants' actions set forth herein were undertaken pursuant to OCYF policies and/or custom and under color of state law. Defendant's actions were also clearly due to improper training and supervision by OCYF.

## FACTUAL BACKGROUND

8. In March of 2019, Plaintiffs resided in Allegheny County with their 4 children.

9. On April 29, 2019, Defendant Horton filed four (4) Petitions alleging that Plaintiffs' children were Dependent children as defined by the Juvenile Act. Horton Alleged that on March 2, 2019, OCYF received a referral alleging domestic violence in which Mr. Guest received a bloody nose after an argument concerning a cell phone charger. The Petitions alleged that J.G. was in her mother's arms at the time but was not harmed in any way.

10. The Petitions alleged that Mr. and Mrs. Guest were interviewed during an unannounced home visit on March 2, 2019, and that they denied domestic violence and denied that J.G. was in her mother's arms during an argument between Plaintiffs concerning a phone charger. The Petitions alleged that Mr. Guest agreed to cooperate if a caseworker was assigned to complete further investigation.

11. The Petitions alleged that an appointment letter was sent to the home scheduling a home visit on March 19, 2019. However, on March 19, 2019, the Plaintiffs were not home.

12. The Petitions alleged that on April 2, 2019, Horton arrived at the Guest home for an unannounced visit. Horton was advised that she would not be allowed into the home until Mr. Guest spoke to the director of the agency. Horton alleged that she advised Mr. Guest that a petition would be filed because of concerns of domestic violence and OCYF being unable to assess the children's safety.

13. The Petitions alleged that Mr. Guest spoke with the OCYF regional director and agreed to cooperate with a home visit. The home visit was completed on April 9, 2019. The Petitions alleged no harm or danger to any of the children.

14. The Petitions then alleged various past incidents, none involving any harm to the children.

15. In an apparent effort to beef up petitions that contain no information that Plaintiffs' children were being abused or neglected in any way by Plaintiffs or that any abuse or neglect was imminent, Horton alleged that she contacted Westmoreland County Children's Bureau concerning matters that allegedly occurred in 2014. Horton alleged that Mr. Guest acknowledged violating probation during a domestic violence related incident and that he was reportedly on probation and was to complete court ordered anger management and drug and alcohol counseling.

16. Plaintiffs have been advised by the Westmoreland County Children's Bureau that no such information was provided to Horton and that the allegation in the Petitions are false. Plaintiffs have also been advised that the case should have been closed before the children were taken because the Defendants failed to create a family plan.

17. The alleged basis for the Petitions was that Plaintiffs' children were subject to abuse and/or neglect because they were without proper care or control.

18. On May 15, 2019, a hearing was held on the Petitions by the Juvenile Division of the Court of Common Pleas of Allegheny County. Judge McCrady issued an order of court that included, among other things, an order that the "Parents have screens today if positive referred for D&A evaluation. If any new allegations of IPV [intimate partner violence] or physical abuse allegations are received by OCYF – OCYF to obtain an ECA [Emergency Custody Authorization]." The order did not state in any way that if the screens were unable to be completed on May 15, 2019, that Plaintiffs' children would be taken from their parents and placed in foster care. In fact, the order did not order that the children would be placed in foster care even if there was a positive drug screen.

19. In compliance with the order of court, Plaintiffs submitted to a drug screen on May 15, 2019. Unfortunately, before the closing time of the testing office, Mr. Guest was unable to

provide a urine sample, despite reasonable efforts to comply with the order. The testing facility was closing; and the tester provided supporting documentation to Mr. Guest that he was present and attempted to provide a urine sample. The tester noted at the bottom of the documentation that he had observed Mr. Guest attempt to produce a specimen, but he was unable to do so. The tester wrote the explanation because the form did not have any area to note that a screen was not completed other than a designation that the test was refused.

20. The test administrator advised Mr. Guest to come back the next day to provide a sample. Mr. Guest came back the following morning at which time he was able to produce a urine sample. Mr. Guest's drug screen results were negative. Unfortunately, Plaintiffs' children were immediately and illegally taken from their parents before Mr. Guest had an opportunity to go back to complete the screen.

21. Mrs. Guest did complete the drug and alcohol screen on May 15, 2019.

22. It is believed and therefore averred that Defendants obtained an ECA over the phone based solely upon the fact that one parent was unable to complete the drug screen earlier that day. Defendants provided false information to obtain the ECA because the children were in no danger, their mother had completed the test and the order related to the ECA did not state in any way that Defendants could obtain an ECA if one of the Plaintiffs failed to complete the screen that day. In short, there was absolutely no proper basis for Defendants to seek or obtain an ECA.

23. In the evening on May 15, 2019, Horton appeared at the plaintiffs' home accompanied by the police. Mr. Guest showed Horton and the police evidence of his attempt to complete the drug screen.

24. Horton then called her supervisor as there was obviously no proper basis to act upon the ECA. Horton then claimed that there was nothing she could do and that she was told she had

to continue to process the ECA because it was already issued. Horton refused to call the judge and claimed that the judge would not be available. Horton insisted that the children be immediately removed from Plaintiffs' custody.

25. While Defendants had absolutely no reason to remove the children from Mrs. Guest, the Plaintiffs nonetheless attempted to identify volunteers from their church community to take the children. Defendants did not give Plaintiffs enough time to confirm arrangements. Instead, Defendants placed in foster care in Butler County.

26. Defendants knew when they sought the ECA and when they took the children from their parents that there was no issue with Mrs. Guest's drug screen that day. Horton was clearly aware at the time that two-month old J.G. was being breast fed by Mrs. Guest at the time.

27. Defendants, in violation of the entire family's civil rights, forcibly removed the children and placed them in foster care.

28. After the children were taken, Mrs. Guest had text message communication with Horton. For example, Mrs. Guest wrote to Horton:

- Hello? Why aren't you returning my calls or texts? You told me you would call with info where they're at, etc.
- I can't just sit here being ignored not knowing where or who my kids are with. Especially when there really wasn't a reason for them to be taken.

29. On May 16, 2019, Defendants filed a Shelter Care Application in which it was noted that Plaintiffs' children were taken into custody and "an ECA was obtained as it was ordered if the parents did not comply with a drug screen and other requests." However, as stated above, the May 15, 2019 order made no reference to removal of Plaintiffs' children if the screen was not completed that day. Defendants claimed Mr. Guest refused to complete the drug screen.

Defendants have produced their file to Plaintiffs and there is no documentation contained therein concerning an ECA.

30. While two-month old J.G. was in Defendants' custody she was placed on baby formula instead of her mother's breast milk. J.G. had an allergic reaction to the formula she was forced to consume and required hospitalization.

31. Horton and Mrs. Guest sent the following text messages to one another on May 16, 2019:

- [Horton] - Nicole, the baby had a reaction to the formula. The caregiver took [J.G.] to the doctor to get checked. She just called me and told me what happened. [J.G.] is clearing up, her breathing was normal and so was her pulse. The doctors didn't prescribe anything. Our nurse at the office is calling J.G.'s pcp to see what formula would be best. I wanted to let you know.
- [Mrs. Guest] - What kind of reaction?
- [Horton] - Broke out in hives.
- [Mrs. Guest] - This really upsets me. I hope you can sleep at night knowing that you put her through this. ☹
- [Horton] - Also you can call [I.G.] tomorrow at 7 pm.
- [Mrs. Guest] - Tomorrow we are getting the them back tmrw I thought?
- [Horton] - I said it will be up to the judge. You'll have to explain the situation to the judge. …
- [Horton] - Bring your pump milk to court tomorrow. If they had gone with the other family that you had asked us to place them with you were able to meet with them half day. Not this foster family and I did not say you were able to meet with this foster family. Her reaction was one time today.

32. To this day, Defendants have refused to tell Plaintiffs where J.G. received medical treatment while in Defendants' custody.

33. On May 17, 2019, a hearing was conducted on the Shelter Care Petition filed by Defendants. The court found that after the initial screen attempt on May 15, 2019, "Parents later tested (-) at screens." Physical custody was returned to Plaintiffs.

34. During the hearing, despite having no justification and despite Plaintiffs' negative drug screens, Defendants arbitrarily continued efforts to keep the children in foster care custody. The Hearing Officer asked Defendants: "Why is this here? He passed the drug test." Clearly, Defendants had no legitimate basis for their Petitions or their ongoing efforts to keep the children separated from their parents.

35. At the conclusion of the hearing, Horton told Mrs. Guest: "If this was any other judge, you would not have your kids."

## Count I – 42 U.S.C. § 1983

### Violations of Plaintiffs' Constitutional Rights to Substantive Due Process

36. Plaintiffs incorporate by reference the averments of Paragraphs 1-35 of the Complaint as if the same were set forth in full.

37. Deprivation of a parent's custodial relationship with a child is among the most drastic actions that a government body can take against an individual's liberty interest, with profound ramifications for the family unit and for each member of the family.

38. Defendants violated Plaintiffs' civil rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America. Plaintiffs had constitutionally protected liberty interests in the custody, care, and management of their children. All Plaintiffs have a liberty interest in familial integrity.

39. The Due Process Clause of the Fourteenth Amendment prohibits government from interfering in the familial relationships unless the government adheres to the requirements of procedural and substantive due process.

40. Defendants interfered with Plaintiffs' liberty interests by forcibly removing the children from their parents because Defendants had no objective reasonable and articulable evidence giving rise to a reasonable suspicion that the children had been abused or were in imminent danger of abuse by their parents.

41. Defendants' removal of the children from their parents and their home was an illegal intrusion and an arbitrary abuse of government power.

42. The removal of the children was an extra-judicial activity that was in violation of any qualified immunity Defendant Horton might otherwise enjoy.

43. Defendants' knew that two-month old J.G. was breastfeeding when she was forcibly removed from her mother and placed on formula.

44. Defendants acted with deliberate indifference when then placed a nursing child in foster care and placed J.G. on formula without any effort to determine whether the child was likely to have an allergic reaction to formula. Defendants ignored an obvious risk of negative and dangerous health consequences to J.G.

45. Defendants had an obligation to protect J.G. while she was in foster care.

46. J.G. was harmed by her placement in foster care and the forced ingestion of formula.

47. As a result of Defendants' violations of Plaintiffs' civil rights Plaintiffs have endured, and will endure in the future, fear, emotional distress, mental anguish, pain, suffering,

embarrassment, humiliation, physical harm, lost wages, medical expenses, and legal expenses to defend against Defendants' actions and allegations.

WHEREFORE, Plaintiffs demand judgment against Defendants, compensatory damages, nominal damages, punitive damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

### Count II - 42 U.S.C. § 1983

### Violations of Plaintiffs' Constitutional Rights to Procedural Due Process

48. Plaintiffs incorporate by reference the averments of Paragraphs 1-47 of the Complaint as if the same were set forth in full.

49. Plaintiffs and their children were forcefully separated based upon false allegations in Defendants' Petitions.

50. Defendants misrepresented the terms of the court order, separated the family, and obtained an ECA over the phone without any legitimate basis or evidence.

51. Defendants obtained an ECA under false pretenses.

52. Defendants forcefully separated the family based upon an order of court that did not permit separation, and the ECA was obtained ex-parte, without justification and objective evidence of abuse or neglect. There was no justifiable reason to remove the children from their mother's custody.

53. Defendants filed and pursued Shelter Petitions without a reasonable basis.

54. As a direct and proximate result of the above-mentioned practices Plaintiffs were deprived of procedural due process.

55. As a result of Defendants' violations of Plaintiffs' civil rights Plaintiffs have endured, and will endure in the future, fear, emotional distress, mental anguish, pain, suffering, embarrassment, humiliation, physical harm, lost wages, medical expenses, and legal expenses to defend against Defendants' actions and allegations.

WHEREFORE, Plaintiffs demand judgment against Defendant, compensatory damages, nominal damages, punitive damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

Respectfully submitted,

THOMSON, RHODES & COWIE, P.C.

Dated January 28, 2020

/s Thomas B. Anderson
Thomas B. Anderson, Esquire
PA I.D. #79990

THOMSON, RHODES & COWIE, P.C.
Firm No. 720
Two Chatham Center, 10th Floor
Pittsburgh, PA 15219
(412) 232-3400

Attorneys for the Plaintiffs